UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| JEREMY THOMAS LETE, ) | |
| ) | |
| Plaintiff, ) | Civil No. 14-66-GFVT |
| ) | |
| V. ) | |
| ) | **MEMORANDUM OPINION** |
| CAROLYN COLVIN, ) | **&** |
| Commissioner of Social Security, ) | **ORDER** |
| ) | |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Jeremy Thomas Lete brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of an administrative decision of the Commissioner of Social Security (Commissioner) denying Lete's application for disability insurance benefits (DIB) and supplemental security income (SSI). The Court, having reviewed the record and for the reasons set forth herein, will DENY Lete's Motion for Summary Judgment [R. 10] and GRANT that of the Commissioner, [R. 11].

**I**

Lete filed applications for DIB and SSI on March 7, 2010. [Transcript (Tr.) 110-11]. She alleges a disability beginning on October 29, 2011, due to a speech impediment and depression. [Tr. 121]. Lete's application was denied initially (June 5, 2012), and upon reconsideration (September 19, 2012). [Tr. 94, 88]. Subsequently, at Lete's request, an administrative hearing was conducted by Administrative Law Judge (ALJ) Christopher Van Dyck (May 1, 2013). [Tr. 321-35]. Lete, who was twenty-seven years old on the date of the hearing, has a high school education and an associates' degree in general studies. [Tr. 322-23]. Previously, Lete worked in

retail, unloading deliveries, helping customers, bagging groceries, and pulling in shopping carts. [Tr. 323-25]. He left his most recent job at Kroger due to relocation. [Tr. 325].

In evaluating a claim of disability, an ALJ conducts a five-step analysis. *See* 20 C.F.R. § 416.920.[1] First, if a claimant is working at a substantial gainful activity, he is not disabled. 20 C.F.R. § 416.920(a)(4)(i). Second, if a claimant does not have any impairment or combination of impairments which significantly limits his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 416.920(a)(4)(iii). Before moving to the fourth step, the ALJ must use all the relevant evidence in the record to determine the claimant's residual functional capacity (RFC), which is an assessment of one's ability to perform certain physical and mental work activities on a sustained basis despite any impairment experienced by the individual. *See* 20 C.F.R. § 404.1545. Fourth, the ALJ must determine whether the claimant has the RFC to perform the requirements of his past relevant work, and if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). Fifth, if a claimant's impairments (considering his residual

---

[1] The Sixth Circuit summarized this process in *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469 (6th Cir. 2003):

> To determine if a claimant is disabled within the meaning of the Act, the ALJ employs a five-step inquiry defined in 20 C.F.R. § 404.1520. Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work, but at step five of the inquiry, which is the focus of this case, the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile.

*Id.* at 474 (internal citations omitted).

2

functional capacity, age, education, and past relevant work) prevent him from doing other work that exists in the national economy, then he is disabled.  20 C.F.R. § 416.920(a)(4)(v).

In this case, at Step 1, the ALJ found that Lete had not engaged in substantial gainful activity since October 29, 2011, the alleged onset date.  [Tr. 14].  At Step 2, the ALJ found that Lete has three "severe" impairments: affective disorder, borderline intellectual functioning, and speech and language delay.  [*Id*.]  At Step 3, the ALJ found that Lete's impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, including, in particular Listing 12.04.  [Tr. 17].  The ALJ then considered the entire record and determined that Lete possessed the residual functional capacity to perform a full range of work at all exertional levels, but with a number of nonexertional limitations: "simple routine tasks involving no more than occasional coworker or supervisor contact, no public contact, and no quota or production based work."[2]  [Tr. 19-20].  At Steps 4 and 5, the ALJ accepted Vocational Expert Bill Ellis' hearing testimony that, considering Lete's age, education, and RFC, there are a significant number of jobs in the national economy that Lete could perform.  [Tr. 22-23.]  Accordingly, on June 24, 2013, the ALJ found that Lete was not "disabled" and therefore is ineligible for DIB and SSI.  [Tr. 22].  The Appeals Council declined to review the ALJ's decision [Tr. 5], and Lete now seeks judicial review in this Court.

## II

This Court's review is limited to whether there is substantial evidence in the record to support the ALJ's decision.  42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Shelman v. Heckler*, 821 F.2d 316, 319-20 (6th Cir. 1987).  "Substantial evidence" is

---

[2] As discussed below, the Court concludes that this RFC reflects a scrivener's error, and the phrase restricting Lete from production or quota-based work should be omitted.  *See infra* Part II(B).

3

"more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*) (quotes and citations omitted).

In determining the existence of substantial evidence, courts must examine the record as a whole. *Cutlip*, 25 F.3d at 286 (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). However, courts are not to conduct a *de novo* review, resolve conflicts in evidence, or make credibility determinations. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (citations omitted); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988). Rather, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *Ulman*, 693 F.3d at 714; *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

### A

Lete first contends that the ALJ erred when he failed to expressly consider at Step Three whether Lete met Listing 12.05(C) for intellectual disability. Specifically, Lete argues that his low IQ tests from childhood establish that he meets the 12.05(C). On October 31, 1991, at the age of five, Lete scored a composite of 63 on the Stanford-Binet Intelligence Scale. [Tr. 192]. Under the Weschler Intelligence Test for Children, Lete scored a full scale IQ of 58 on September 2, 1993 (age seven), and a 67 on August 22, 1996 (age ten). [*Id.*] On April 17, 2012,

4

when he was twenty-five years and eleven months old, Lete underwent testing with Brittany Shaw, M.S., and Dr. Jessica Huett, Psy.D., and scored a full scale IQ of 73, a verbal IQ of 80, and a performance score of 77 on the Weschler Adult Intelligence Scale. [Tr. 202]. He argues that those more recent, higher scores are less relevant compared to the "longevity" and apparent consistency of his childhood scores. [Pl.'s Mem. in Supp. of Mot. Summ. J., R. 10-1 at 10].

"[N]either the listings nor the Sixth Circuit require the ALJ to 'address every listing' or 'to discuss listings that the applicant clearly does not meet.'" *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. 2014) (quoting *Sheeks v. Comm'r of Soc. Sec.*, 544 F. App'x 639, 641 (6th Cir. 2013)). The ALJ need only discuss the relevant listing when "the record raises 'a substantial question as to whether [the claimant] could qualify as disabled' under a listing." *Id.* (quoting *Abbott v. Sullivan*, 905 F.2d 918, 925 (6th Cir. 1990)). In order to raise a "substantial question," a claimant must "point to specific evidence that demonstrates that he reasonably could meet or equal *every* requirement of the listing." *Id.* (citations omitted) (emphasis added).

The ALJ did not expressly consider Listing 12.05(C) in his decision. Because Lete cannot show that he meets one of the Listing's essential requirements, however, the Court concludes that this does not amount to reversible error. *Smith-Johnson*, 579 F. App'x at 433.

Listing 12.05(C) has two components. First, under the "diagnostic definition," the claimant must establish that he has "significantly subaverage general intellectual functioning with deficits in adaptive functioning [that] initially manifested [before age twenty-two]." 20 C.F.R. Pt. 404, App. 1, § 12.05; *see also Smith-Johnson*, 579 F. App'x at 432. Second, under the "severity criteria," the claimant must show that he meets one of four criteria. § 12.05(A)-(D);

5

*Smith-Johnson*, 579 F. App'x at 432. Under either of the two criteria relevant here,[3] "a valid verbal, performance, or full scale IQ of 60 through 70" is required. *Id.* Corresponding childhood disability regulations provide that "IQ test results obtained between ages 7 and 16 should be considered current for 4 years when the tested IQ is less than 40, and for 2 years when the IQ is 40 or above." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(D)(10) ("IQ test results must also be sufficiently current for accurate assessment under 112.05. Generally, the results of IQ tests tend to stabilize by the age of 16. Therefore, IQ test results obtained at age sixteen or older should be viewed as a valid indication of the child's current status, provided they are compatible with the child's current behavior.").

The three IQ tests taken before Lete reached the age of 16 are not "valid" tests for purposes of Listing 12.05(C). 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(D)(10); *e.g.*, *Pollard v. Astrue*, No. 1:10-CV-714, 2011 WL 7006245, *5 (S.D. Ohio Oct. 20, 2011) (applying § 112.00(D)(10) to find that adult claimant's IQ tests from his school-aged years were invalid for purposes of establishing criteria under a Listing), *report & recomm. adopted sub nom. Pollard v. Comm'r of Soc. Sec.*, No. 1:10-CV-714, 2012 WL 95426 (S.D. Ohio Jan. 12, 2012); *Redding v.*

---

[3] Of the four criteria under 12.05(C), only sub-parts (C) and (D) could potentially be applied to Lete:

> A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded; or
> B. A valid verbal, performance, or full scale IQ of 59 or less; or
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function; or
> D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
>> 1. Marked restriction of activities of daily living; or
>> 2. Marked difficulties in maintaining social functioning; or
>> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
>> 4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, App. 1, § 12.05(A)-(D).

*Astrue*, No. CIV.A. 2:10-CV-00082, 2010 WL 3719248, *16 (S.D. Ohio July 27, 2010) (same), *report & recomm. adopted sub nom. Redding v. Comm'r of Soc. Sec.*, No. CIV.A. 2:10-CV-00082, 2010 WL 3719265 (S.D. Ohio Sept. 15, 2010).  Each of these tests was only valid for two years under the regulations, and the validity of the most recent IQ test he relies on – taken in 1996 when Lete was ten years old – has long since expired.  In fact, the only valid and current IQ test in the record places him *above* the Listing's maximum score of 70:  On April 17, 2012, when Lete was nearly twenty-six years old, he scored a full scale IQ of 73, a verbal IQ of 80, and a performance score of 77 on the Weschler Adult Intelligence Scale, according to reports from Brittany Shaw and Dr. Huett.  [Tr. 202].  Because he cannot show that he has a "valid verbal, performance, or full scale IQ of 60 through 70," Lete cannot satisfy the requirements of Listing 12.05(C).  The ALJ's failure to expressly consider the applicability of Listing 12.05(C) at Step Three was harmless error.

**B**

Next, Lete argues that the ALJ failed to accurately interpret the Vocational Expert's testimony when he concluded that, based on the RFC that he assigned to Lete, there is a significant number of jobs in the national economy that Lete can perform.  Lete is correct that there is a minor discrepancy in the ALJ's decision, but the Court concludes that the error is harmless and does not warrant remand.

During the hearing, the ALJ posed two hypothetical questions to the VE.  First, he asked the VE to consider a person with no prior relevant work and the same age, education, and work background as Lete.  His first hypothetical asked the following:

> Q [ALJ]: If we limited him to simple, routine tasks with no more than occasional contact with coworkers and supervisors, no public contact, *no production or*

>*quota based work*[,] and no exertional limitations, would there be any jobs in the regional or national economy such an individual could perform?
>
>A [VE]: Your Honor, in my opinion, there would not be. Basically jobs are production or public[,] and with the hypothetical and not permitting any one of those, so, no, sir.

[Tr. 333-34 (emphasis added)]. For his second hypothetical, the ALJ removed the restriction on production or quota-based work:

>Q [ALJ]: In hypothetical number two, if it was the same as hypothetical number one, however we would eliminate the requirement of no production or quota based work, would there be jobs such an individual could perform?
>
>A [VE]: Yes, Your Honor, there would be.

[Tr. at 334]. The VE went on to identify three "representative," non-exhaustive examples: a farm worker, which has 1,800 jobs available in the region and 116,000 available in the nation; a packer, with 1,200 jobs available in the region and 87,000 in the nation; and a landscape worker, with 1,700 jobs available in the region and 170,000 in the nation. [*Id.*]

At Step Four in his decision, the ALJ stated that Lete's RFC permitted him to perform a full range of work at all exertional levels with some nonexertional limitations: "simple routine tasks involving no more than occasional coworker or supervisor contact, no public contact, and *no quota or production based work.*" [Tr. 19 (emphasis added)]. However, at Step Five, the ALJ found that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that claimant can perform." [Tr. 21]. He expressly cited the VE's testimony that occupations such as a farm worker, packer, and landscape worker are available in this region. [Tr. 22]. The problem: according to the VE's testimony, under the RFC stated in the ALJ's decision – the RFC

8

including the restriction on quota-based work – there are actually no jobs available in the regional or national economy.

This is not, however, reversible error, because the RFC reflecting a restriction on production or quota-based work appears to be a scrivener's error. The ALJ's reasoning under both Step Four and Step Three demonstrate that the RFC was not intended to include the quota-based restriction.

In support of his determination at Step Four, the ALJ focused heavily and exclusively on Lete's speech impediment and his intellectual functioning, and he did not cite any evidence supporting the notion that Lete should be precluded from production-based work. As to Lete's speech impediment, the ALJ noted that "this condition may cause some distress or embarrassment [in Lete's perception]," but it "certainly does not result in any marked limitations for the performance of work activity." [Tr. 20]. Relying heavily on Dr. Huett's cognitive analysis and in part on a state agency consultative speech/language evaluation, the ALJ ultimately concluded that, "in light of the evidence supporting his severe speech impairment, . . . I believe it is appropriate to limit him to no public contact." [Tr. 21]. As to Lete's intellectual functioning, the ALJ also gave great weight to Dr. Huett's report, noting that records showed that Lete's adaptive functioning was "excellent." [Tr. 20]. Finally, the ALJ found that no objective evidence supported Lete's subjective allegation that he was depressed or his "self-diagnosis" of bipolar disorder: he was never given a specific diagnosis in the two appointments he had at Mountain Comprehensive Care, and he has never received medication. [Tr. 20]. Nothing in the ALJ's analysis indicates an intent to restrict Lete from quota-based work.

The clearest indication of the ALJ's drafting error is found in his analysis at Step Five. There, he explicitly cited the VE's hearing testimony that occupations such as a farm worker,

packer, and landscape worker are available in this region. [Tr. 22]. According to the VE, those jobs were only available for an individual with an RFC that did *not* include a restriction on production or quota-based work. [*See* Tr. 334]. Given this internal inconsistency, it appears that the ALJ only inadvertently included that limitation in his conclusion regarding Lete's RFC. As the Commissioner put it in her brief, "[i]t would make no sense for the ALJ to find that Plaintiff had a residual functional capacity that precluded him from any work, but then go on to find that he could perform the jobs identified in the VE's testimony based on a . . . less restrictive[] residual functional capacity." [Comm'r Mem. in Supp. of Mot. Summ. J., R. 11 at 6].

While it was error for the ALJ to conclude that jobs existed in the national economy based on the *stated* RFC, that error was harmless. As the Sixth Circuit has recently explained, "if an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses." *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) (citations and internal quotation marks omitted). A remand to correct this scrivener's error would be an "idle and useless formality" – especially since the correction is easily found in the hearing transcript and the ALJ's reasoning. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004) (citing *NLRB v. Wyman-Gordon*, 395 U.S. 759, 766 n.6 (1969)).

Other courts have declined to remand when the VE's testimony, together with internal references or reasoning in the ALJ's decision, clearly shows that an error is merely a drafting mistake. In *Dean v. Astrue*, No. CIV. A. 5:08CV78, 2009 WL 2883013 (N.D.W. Va. Sept. 2, 2009), *aff'd sub nom. Dean v. Comm'r of Soc. Sec.*, 386 F. App'x 379 (4th Cir. 2010), the ALJ's RFC determination included a limitation that the claimant "could do no more than fast-paced or

assembly line work." *Id.* at *27 n.9.  The court concluded that the sentence must have been a drafting error: not only did it make no sense, but it also directly contradicted "the actual hypothetical to the VE upon which the ALJ relied." *Id.*  The court did not order remand but simply substituted the corrected limitation in its analysis.  Similarly, in *Butterick v. Astrue*, the ALJ's decision at Step Five misstated the VE's testimony and provided an exertional level for certain jobs that conflicted with the RFC.  *Butterick v. Astrue*, No. CIV-09-986-D, 2010 WL 2610790, *7 (W.D. Okla. May 7, 2010), *report & recomm. adopted*, No. CIV-09-986-D, 2010 WL 2610291 (W.D. Okla. June 24, 2010), *aff'd*, 430 F. App'x 665 (10th Cir. 2011).  Since "the ALJ obviously intended to rely on the VE's testimony," and the correct exertional level was clear, the court held that the "typographical error appearing in the ALJ's decision d[id] not warrant a remand of the decision." *Id.* at *7; *see also Lawson v. Apfel*, 198 F.3d 258, n.1 (10th Cir. 1999) (agreeing with the Commissioner that the ALJ's RFC determination, which stated that the claimant was restricted from "sitting" for no more than two hours, "should have been 'standing,'" apparently based on review of the whole record and decision).

In much the same way, ALJ Van Dyck's reasoning and direct citation to the VE's hearing testimony at Step Five demonstrates that he intended to rely on the VE's conclusion that certain jobs *were* available in the national economy.  *See Dean*, 2009 WL 2883013 at n.9; *Butterick*, 2010 WL 2610790 at *7.  The inclusion of the production-work restriction in his stated RFC is therefore merely a scrivener's error, and it does not warrant remand of this case.  *See Rabbers*, 582 F.3d at 654*; see also Butterick*, 2010 WL 2610790 at *7.

## C

Finally, Lete ostensibly argues that the ALJ's decision is not supported by substantial evidence. After setting forth the substantial-evidence standard, Lete provided the following two-sentence argument:

> It is the contention of the Plaintiff under these standards of review that there is not substantial evidence to support the denial of his application for social security benefits. The objective medical evidence unequivocally documents that Plaintiff has several severe conditions which are disabling.

[Pl.'s Mem. in Supp. of Mot. Summ. J., R. 10-1 at 13]. Aside from citing the applicable standard, Lete has provided no analysis whatsoever and offers no specific legal or evidentiary support for this claim. When a claimant merely refers to issues "in a perfunctory manner, unaccompanied by some effort at developed argumentation," the issue is "deemed waived.'" *Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) (citations and internal quotation marks omitted); *see also Hicks v. Astrue,* 2010 WL 399099, *3 (E.D. Ky. Jan. 26, 2010) (deeming claimant's argument waived because claimant "merely provid[ed] ... conclusory statements that the ALJ's findings [were] incorrect" without any additional explanation); *see also Macielak v. Comm'r of Soc. Sec.*, No. 13-CV-10148, 2013 WL 6839292, at *11 (E.D. Mich. Dec. 27, 2013) (deeming claimant's argument that the ALJ failed to properly discount her subjective allegations because the Plaintiff "merely mention[ed] [them] perfunctorily without developing an argument"). "The court is under no obligation to scour the record for errors not identified by [the] claimant." *Pawloski v. Comm'r of Soc. Sec.*, No. 13-11445, 2014 WL 3767836, at *6 (E.D. Mich. July 31, 2014) (citations and internal quotation marks omitted). Lete's perfunctory and undeveloped argument on this point therefore deemed waived.

12

### III

Accordingly, for the foregoing reasons, it is hereby **ORDERED** as follows:

1. Plaintiff's Motion for Summary Judgment [**R. 10**] is **DENIED**;

2. Defendant's Motion for Summary Judgment [**R. 11**] is **GRANTED**; and

3. **JUDGMENT** in favor of the Defendant will be entered contemporaneously herewith.

This the 28th day of July, 2015.

Signed By:
*Gregory F. Van Tatenhove*
United States District Judge